NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

APRILLEANN H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.L., A.L., R.M., *Appellees.*

No. 1 CA-JV 20-0135
FILED 10-15-2020

Appeal from the Superior Court in Maricopa County
No. JD 36077
The Honorable Sam J. Myers, Judge

**REVERSED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1        Aprilleann H. ("Mother") appeals the juvenile court's order terminating her parental rights to three of her children (collectively, "the children"), on grounds of abandonment, nine months' out-of-home placement, and fifteen months' out-of-home placement. For the following reasons, we reverse the court's rulings on abandonment and nine months' out-of-home placement. We vacate the court's ruling on fifteen months' out-of-home placement and remand for further proceedings.

**BACKGROUND**

¶2        Mother and Alfred L. are the biological parents of A.L. and A.L., twins, who were born in 2014. Mother and an unknown father are the biological parents of R.M, who was born in 2015. Neither Alfred L. nor the other alleged father are parties to this appeal.

¶3        In April 2018, Mother left the children with a friend, who took them to a doctor and dentist. Each of the children faced various medical issues at the time, including failure to thrive. In July 2018, the Department of Child Safety ("DCS") filed a dependency petition alleging the children were dependent as to Mother due to substance abuse and neglect.

¶4        Mother entered a no contest plea to the dependency petition, and the juvenile court found the children dependent as to Mother based on substance abuse and neglect. The court approved a case plan of family reunification and ordered DCS to provide services to Mother, including substance abuse assessment and treatment through TERROS, urinalysis testing through PSI (a drug testing facility), visitation, and parenting classes.

¶5        At the September 2019 review hearing, Mother explained she had delivered her fourth child in June 2019 by C-section, which caused a delay in completion of services. She requested that DCS give her another TERROS referral and that she be referred for a hair follicle test. Over

Mother's objection, the juvenile court approved DCS's request to change the case plan to reunification concurrent with severance and adoption.

¶6          Mother failed to appear at the December 2019 review hearing when the court approved changing the case plan to severance and adoption. DCS then filed a motion to terminate Mother's parental rights based on abandonment, as well as nine and fifteen months' out-of-home placement. Because Mother did not appear at the January 2020 initial severance hearing, the court found no good cause for her absence and thus she waived her right to contest the termination petition. At DCS's request, the court indicated it would preserve "service and mother's failure to appear to a future hearing."

¶7          Mother was not present at the severance hearing held in March 2020. After receiving brief testimony from a DCS caseworker and admitting four DCS reports, the most recent of which was dated December 11, 2019, the court orally granted DCS's motion on each ground alleged and determined that severance was in the children's best interests. DCS then lodged its proposed findings of fact, conclusions of law, and order, which the juvenile court signed. Mother timely appealed.

## DISCUSSION

¶8          Mother challenges the sufficiency of the evidence as to each ground for termination, and she contends the termination order contains various findings that lack support in the record.

¶9          To sever parental rights, the juvenile court must first determine, by clear and convincing evidence, that a statutory ground for termination exists. *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 4 (App. 2017). We will affirm the court's order if it is supported by reasonable evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We accept the court's factual findings unless they are clearly erroneous. *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 354, ¶ 10 (App. 1998). We do not reweigh the evidence because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

### A.          Fifteen Months' Out-of-Home Placement

¶10          To meet its burden under the fifteen-months' ground, DCS was required to prove (1) it made diligent efforts to provide appropriate reunification services, (2) the children were in an out-of-home placement

for at least fifteen months, (3) Mother was unable to remedy the circumstances that caused the children to be in out-of-home placement, and (4) a substantial likelihood existed that Mother would not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c). In deciding whether DCS satisfied its burden, the juvenile court was required to "consider the availability of reunification services to the parent and the participation of the parent in these services." *Id.* § 8-533(D).

**¶11** As an initial matter, a parent in a severance action is required to appear at court hearings, including the termination adjudication hearing. *See* A.R.S. § 8-537(C); Ariz. R.P. Juv. Ct. ("Rule") 66(D)(2). The juvenile court may proceed in the parent's absence and terminate the parent-child relationship based upon the record and evidence presented if the court finds that a parent had proper notice and failed to appear without good cause. *See* Rule 66(D)(2). Mother does not argue she did not receive notice of the hearings she missed, including the initial severance hearing and the severance hearing, was not informed of the consequences for failing to appear, or that she had good cause for failing to appear. Thus, underlying our review of the sufficiency of the evidence is the presumption that by failing to appear, Mother admitted the allegations of the motion for termination. *See* Rule 66(D)(2). Nonetheless, DCS was still required to present clear and convincing evidence supporting the alleged grounds. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 212, ¶ 23 (App. 2008).

**¶12** Addressing the ground of fifteen months' out-of-home placement, the juvenile court found that DCS made diligent efforts to offer Mother reunification services, but she failed to maintain a consistent or appropriate relationship with the children. The court also found that Mother (1) did not participate in substance-abuse treatment, (2) failed to test through PSI, (3) minimally participated in visitation, and (4) took no steps to remedy the circumstances causing her children to be in an out-of-home placement. Mother argues that various findings, including these four, are not supported by the record. She also asserts the record lacks evidence showing she was unable to remedy her substance abuse or neglect—the reasons the children were removed from her care.

**¶13** Citing *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569 (App. 2019), DCS contends Mother waived her ability to challenge the court's findings on appeal because she failed to object to the proposed findings before the juvenile court signed them. In *Aleise H.*, we concluded that a mother who challenged a termination order waived her newly-raised

argument that the juvenile court failed to "set forth case-specific findings of fact to support its best-interests determination." *Id.* at 573, ¶¶ 11–14.

¶14 We are not persuaded by DCS's contention that a parent waives the ability to argue for the first time on appeal that certain findings lack support in the record. Unlike *Aleise H.*, and the cases cited therein, Mother does not argue the juvenile court's findings were inadequate or lacked specificity. *See, e.g.*, *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 371, ¶ 6 (App. 2009) (stating that when a party fails to object to "lack of detail" in the court's findings, "the issue is deemed waived when raised for the first time on appeal" (citation omitted)); *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶¶ 20–21 (App. 2007) (applying waiver to issues relating to alleged insufficiency of findings first raised on appeal). Instead, she argues the findings are not supported by the record. DCS cites no authority holding that a parent waives the right to challenge the sufficiency of the evidence on appeal by asserting for the first time that certain findings are not supported by the record. Indeed, when a parent challenges the sufficiency of the evidence on appeal, it is our duty to determine whether the severance findings are supported by reasonable evidence, or in other words, not clearly erroneous. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8 ("We will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." (citation omitted)).

¶15 Given the important rights at stake in a severance proceeding, when DCS submits proposed findings to the juvenile court, it is incumbent on DCS to strive for accuracy in preparing those findings. And we encourage parents' counsel to object to proposed findings when they are clearly erroneous, and thus avoid unnecessary delay that may otherwise occur by waiting to raise the issue on appeal. *Cf. Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178–79, ¶ 16 (App. 2014) (explaining that "a parent's failure to assert legitimate complaints in the juvenile court about the adequacy of services needlessly injects uncertainty and potential delay into the proceedings, when important rights and interests are at stake and timeliness is critical"). Nonetheless, the juvenile court has the ultimate responsibility to ensure that a severance order's findings are supported by the evidence. *See* Rule 66(F)(2)(a) (providing that "[a]ll findings and orders shall be in the form of a signed order or set forth in a signed minute entry" and, if the movant met its burden of proof, "the court shall . . . [m]ake specific findings of fact in support of the termination of parental rights and grant the motion or petition for termination"); *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012) (explaining that findings in a

severance case should allow an appellate court "to determine exactly which issues were decided" and whether the juvenile court "correctly applied the law").

¶16     The findings made here, that Mother did not participate in substance-abuse treatment and failed to test through PSI, are not supported by the record.   Mother participated in at least two substance-abuse assessments through TERROS.  She was assigned to an intensive outpatient program, where she was "minimally engaged," and was later closed out of TERROS based on her lack of engagement.   Although Mother's participation in drug testing was at times inconsistent, the record confirms that from September 2018 through February 2019, Mother was scheduled for 48 tests and completed 30; the results were negative.  From March through August 2019 she was scheduled to participate in 46 tests and completed 40, all of which came back negative.  Mother participated in a hair follicle test in 2018, but the results of the test are not in the record.  Nothing in the record indicates that Mother's fourth child, who is not a party to these proceedings, was born substance-exposed or removed from Mother's care.   Thus, although her participation in substance-abuse treatment was limited, and she failed to complete drug testing after August 2019, the juvenile court clearly erred in finding she did not participate in those services.

¶17     Because Mother did participate in substance-abuse-related services, the severance order is necessarily incorrect in stating that Mother took "no steps to remedy the circumstances causing her children to be in out of home care."   And this finding is wrong for other reasons.

¶18     DCS submitted a referral for supervised visits in July 2018. The case aide reported that Mother "was appropriate during these visits and engaged well with the children when she attended."  In October, the visits ended due to Mother's lack of engagement and the children's placement "becoming a barrier to visits."   All three of the children had originally been placed in an "unlicensed kinship foster home," but the placement was changed after acting inappropriately with service providers and "becoming a barrier to the case plan goal."  In January 2019, DCS submitted a referral for a parent aide; Mother had visits with the children once a week for four hours.  The March 2019 case report indicates that according to the case aides and parent aide, Mother engaged well with the children and appeared to be emotionally bonded with them.  Mother attended 15 out of 23 visits and 7 out of 22 skill sessions with the parent aide but was closed out of parent aide services in July due to lack of engagement; she was assigned a DCS case aide later that month.   In

September, the case aide reported that Mother "has been attending her visits weekly, providing dinner for the children, and is attentive." The next month, Mother was assigned to a case aide with Maximum Family Care. The case aide reported that Mother saw her children four out of six times in October and was attentive, engaged, and appropriate during visits. Mother participated in one visit in November. This evidence plainly demonstrates that Mother took at least some steps to attempt to remedy the circumstances that led to removal of her children.

¶19        Because we cannot tell whether the court would have concluded that DCS met its burden of proving the grounds for termination based on fifteen months out-of-home placement without the clearly erroneous findings, we vacate the court's order on this ground and remand for further proceedings.

### B.        Nine Months' Out-of-Home Placement

¶20        For similar reasons, we cannot sustain the court's decision to terminate Mother's parental rights based on nine months' out of home placement. To prove termination on this ground, DCS was required to show the children were in an out-of-home placement for at least nine months pursuant to court order or voluntary placement "and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(a).

¶21        For the nine-months' ground, the juvenile court made essentially the same findings discussed above and concluded that "Mother substantially neglected or willfully refused to remedy the circumstances that cause the children to be in an out-of-home placement." Mother argues those findings lack supporting evidence and the record does not establish substantial neglect or refusal to remedy the circumstance because she participated in reunification services and made a good faith effort to comply with services. We agree. Because the record lacks any reasonable evidence supporting termination of Mother's parental rights based on nine months' out-of-home placement, we reverse the court's ruling on this ground.

### C.        Abandonment

¶22        Abandonment is defined as:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial

finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

**¶23** Addressing abandonment, the termination order simply incorporated the first sentence of the statute quoted above, and then stated that Mother "paid no support; sent no cards, gifts, or letters; or *made any contact whatsoever with the child*." (Emphasis added.) Mother argues the italicized portion of the order is not supported by the record. DCS agrees, but contends the error is harmless. We are not persuaded. Given Mother's efforts to engage in reunification services, although inconsistent and sporadic at times, the record before us lacks any reasonable evidence to conclude that Mother abandoned her children. We therefore reverse the court's ruling on abandonment.

### D. Best Interests

**¶24** Mother also challenges the juvenile court's finding that termination is in the children's best interests. Because we are not affirming any of the statutory grounds for termination, we vacate the court's best-interests finding. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018) (explaining termination is a two-step process that first requires proof of a statutory ground for termination).

### CONCLUSION

**¶25** For the foregoing reasons, we reverse the juvenile court's order terminating Mother's parental rights on the grounds of abandonment and nine months' out-of-home placement. We vacate the court's order based on fifteen months' out-of-home placement and remand for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED: AA